ERRINGTON A. BRIGHAM & another *vs.* M & J CORPORATION & others.

Middlesex.    March 8, 1967. — June 8, 1967.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Contract,* Parties, Between stockholders.    *Corporation,* Purchase by corporation of its own stock, Close corporation, Stockholder.    *Equity Jurisdiction,* Specific performance.    *Equity Pleading and Practice,* Parties.    *Sale,* Of stock, Payment of price by instalments.    *Interest.*

Stockholders of a close corporation surviving the death of another stockholder therein were proper parties to bring a suit in equity to compel the administrator of the decedent's estate to sell the decedent's stock to the corporation where it appeared that the decedent as one of the stockholders of the corporation had been a party to a contract made by it and "all of the stockholders" "between and among" themselves reciting that the "named individuals . . . [desired] to arrange for the purchase of their shares by the Corporation in the event of their respective deaths" and providing for such purchase [678]; there was no merit in a contention by the administrator that the corporation should have been joined as a plaintiff instead of as a defendant in the suit, but he rightly contended that the corporation should be "bound by the final decree" therein.    [678–679]

In an agreement obligating a corporation to purchase the stock in it of a deceased stockholder, a provision that "the Corporation shall pay the purchase price . . . in ten equal annual instalments" was not merely "procedural" and was enforceable in equity in accordance with its terms.    [679]

Where an agreement among a close corporation and all its stockholders for the purchase by it of all the stock in it of a deceased stockholder and for the sale of such stock to it by the deceased stockholder's legal representative was mandatory, the administrator of the estate of a deceased stockholder holding a majority of the stock was not entitled to exercise his voting power to abrogate the agreement.    [680]

The administrator of the estate of a deceased stockholder of a corporation, rightly ordered by the final decree in a suit in equity to sell the decedent's stock in the corporation to it in accordance with an agreement among the corporation and its stockholders requiring such sale and payment by the corporation of the purchase price "in ten equal annual instalments," was not entitled to have the decree order the corporation to furnish him with security to guarantee that it would meet its future obligations to him [680–681]; the administrator's "position as a fiduciary appointed by the Probate Court" did not require inclusion of such an order. [682]

Under an agreement requiring a corporation to purchase stock in it held by a deceased's stockholder's legal representative and to pay therefor "in ten equal annual instalments" with interest "upon the unpaid balance of the purchase price from the date of the death of the deceased," interest was payable annually on the unpaid balance and not on the total purchase price. [681]

Under an agreement among a corporation and all its stockholders providing that the stockholders "agree for themselves and for their heirs, executors and administrators to sell, and the Corporation agrees to buy such shares of the Corporation as shall be registered in the name of . . . [the stockholders] at the time of their respective deaths," and that the "Corporation shall pay the purchase price . . . in ten equal annual instalments," but containing no provision as to when the stock of a deceased stockholder should be transferred to the corporation, all of his stock was to be transferred to the corporation upon its tender of the first instalment. [681–682]

Bill in equity filed in the Superior Court on October 27, 1964.

The suit was heard by *DeSaulnier, J.*

*Eli N. Rostler & P. Harold Ready,* for the plaintiffs, submitted a brief.

*Arthur L. Eno, Jr.,* for the defendant H. Arthur Sweatt, administrator.

Spiegel, J. This is a bill in equity in which the plaintiffs seek to enjoin the defendant H. Arthur Sweatt, administrator of the estate of Herbert A. Sweatt, from transferring "or in any manner dealing with" a number of shares of stock in the defendant M & J Corporation (Corporation) "standing in the name of . . . Herbert A. Sweatt, deceased." They also seek to have these same shares transferred to the Corporation upon the payment of a certain sum in ten equal instalments. The trial judge made a "Report of Material Facts, Rulings, and Order for De-

cree." A final decree was entered ordering the defendant H. Arthur Sweatt, as administrator, to deliver to the Corporation 29.5 shares of stock upon payment by it of $15,789.88 with interest at four per cent on the total purchase price from December 5, 1963, to the date of payment; and to deliver "also another 29.5 shares of said stock upon payment by said Corporation of the installment of $15,789.88 due on December 5, 1964, together with interest . . . on the total agreed purchase price of $157,898.75 from December 5, 1963, to the date of payment; and on December 5, 1965, and on each succeeding December 5 until all 295 shares have been transferred." The decree also provided that "Until default by said M & J Corporation in the payment of any of said installments, the . . . [defendant] H. Arthur Sweatt . . . is permanently enjoined from voting any of said 295 shares . . . in such a way as to derogate in any way from said agreement of October 22, 1938. Until default by said M & J Corporation in the payment of any of said installments, the . . . [defendant] H. Arthur Sweatt . . . is permanently enjoined from selling, transferring, hypothecating or in any way disposing of the stock . . . except to transfer it to said M & J Corporation."[1]

The plaintiffs and the defendant H. Arthur Sweatt appealed from the decree. The evidence is reported.

The judge found the following facts. The Corporation is the successor to the corporation known as G. C. Prince & Son, Inc., incorporated on January 14, 1908. The "[C]orporation had capital stock consisting of 565 shares with no par value, of which 472 shares were outstanding and 93 shares were in the treasury . . . and not outstanding." The 472 shares were "held on the books of the [C]orporation in the names of Herbert A. Sweatt, 295 shares; Jennie C. Sweatt, 1 share; Errington A. Brigham, 175 shares; Mildred C. Brigham, 1 share."

On October 22, 1938, an agreement was entered into by Arthur D. Prince, Herbert A. Sweatt, Errington A. Brig-

---

[1] The bill was dismissed as to all other defendants.

ham, Robert G. Dudley, and G. C. Prince & Son, Inc.   This
agreement provided for the purchase of stock held by the
individuals heretofore named upon the death of these in-
dividuals in a manner set forth under paragraph 3 of the
agreement.[2]  Herbert A. Sweatt died on or about Decem-
ber 5, 1963, and his son, H. Arthur Sweatt, was appointed
administrator of his estate.

The ''parties . . . agreed that the value of each share of
stock of . . . [the] [C]orporation is $535.25.   At a subse-
quent meeting of the [C]orporation and a subsequent meet-
ing of the Board of Directors, it was voted to purchase the
stock . . . of Herbert A. Sweatt pursuant to the terms of
the agreement dated October 22, 1938 at a price of $535.25.''

On December 1, 1964, a check for $22,105.83 was sent to
H. Arthur Sweatt, administrator, in payment of ten per
cent of the shares held in the name of Herbert A. Sweatt.
H. Arthur Sweatt has not cashed this check and refuses to
transfer any of the stock.   He ''wants to be paid for the
entire amount of the shares of stock in one lump sum and
not in 10 equal instalments.''

The judge ruled ''That [p]aragraph 3 . . . [of the agree-
ment] contains language that is mandatory wherein the
word 'shall' is used and that the paragraph may not be
waived by the . . . [defendant] H. Arthur Sweatt.''   He
also ruled that ''the agreement dated October 22, 1938, is
valid and binding upon all the parties''; that the stock is
to be paid for in ''10 equal instalments [in] the amount
heretofore agreed by the parties with interest at the rate of
4 per cent; . . . and . . . that . . . H. Arthur Sweatt . . .
shall only transfer 10 per cent of the total shares of stock
to the [C]orporation upon receipt of the check in payment
for the same.''   The judge also ruled that the Corporation

[2] Paragraph 3 reads:  ''The Corporation shall pay the purchase price . . .
[ascertained in a certain way] in ten equal annual instalments except as here-
after provided.   The first instalment shall be payable within one year of the
date of the decease of such individual.   Subsequent instalments shall be pay-
able upon the anniversary dates of such decease until the whole purchase price
shall have been paid.   Interest shall be paid at the rate of four per centum
per annum upon the unpaid balance of the purchase price from the date of the
death of the deceased.''

shall pay to the administrator of the estate in "9 other equal instalments the sum of $15,789.88 with interest on the unpaid balance then remaining due at the rate of 4 per cent per annum."

### The Defendant's Appeal.

1. The defendant first argues that the plaintiffs "are not the proper parties to bring this action." He urges that "Once it became known that Errington A. Brigham (Errington) was the survivor, any apparent contract between him and the [C]orporation became illusory. Neither he nor the [C]orporation was bound to do anything with respect to each other." He further argues that a contract "never existed . . . between Errington . . . and the . . . [defendant's] intestate . . . which was intended to confer mutual rights enforceable by either against the other." We do not agree.

The contract states that it is made "between and among" all of the parties thereto, and recites that the "named individuals are all of the stockholders of the Corporation and desire to arrange for the purchase of their shares by the Corporation in the event of their respective deaths." We think it is clear that the purpose of the agreement is not only to benefit the shareholder who dies by providing a market for the disposition of his shares, but also to benefit the surviving shareholders by assuring them that the shares of the Corporation would continue to be closely held. Contracts of this kind among shareholders of closely held corporations are common and the purposes of such contracts are clear. See Horstein, Stockholders' Agreements in the Closely Held Corporation, 59 Yale L. J. 1040–1041, 1047–1049. The plaintiffs were entitled to enforce the contract against the defendant. See *New England Trust Co.* v. *Spaulding*, 310 Mass. 424, 429; *Winchell* v. *Plywood Corp.* 324 Mass. 171, 178.

We do not agree with the defendant's related argument that this suit is really for the benefit of the Corporation, in the nature of a minority shareholders' derivative suit, and

hence the Corporation should have been joined as a party plaintiff. Compare *Bartlett* v. *New York, N. H. & H. R.R.* 221 Mass. 530, 532.

The defendant also contends that "justice and equity require that the [C]orporation be bound by the final decree." The judge did rule that the agreement was "valid and binding on all the parties" and that "the [C]orporation shall pay to . . . [the defendant] in 9 other equal instalments the sum of $15,789.88 with interest on the unpaid balance." In the final decree the delivery of the shares by the defendant was conditioned upon the payment by the Corporation of the instalment due. In view of our other modifications of the decree set out below we agree with the defendant that the Corporation should also be bound by the final decree and the decree should be modified accordingly. See *Andersen* v. *Albert & J. M. Anderson Mfg. Co.* 325 Mass. 343, 347.

2. The defendant next argues that "[t]he agreement does not require a decree for specific performance over a ten-year period." He characterizes the instalment method of payment set out in the agreement as "procedural," not mandatory. We do not agree. The terms of payment set out in the contract were as definite and binding as the agreement to buy and sell. This is not a case such as *Blabon* v. *Hay,* 269 Mass. 401, cited by the defendant, in which the corporation was given an option of first refusal. There was no error in enforcing the terms of payment set out in the contract.

3. The third ground of appeal of the defendant is the alleged denial by the judge of his "right to vote his intestate's stock until it is transferred to the [C]orporation." He argues that "[u]ntil the transfer of stock to the [C]orporation, the right to vote his intestate's shares is in the" defendant.

But the judge restrained the defendant only from voting the shares "in such a way as to derogate in any way from" the agreement. Furthermore, in view of our holding below, the manner in which the defendant might vote his intestate's shares is moot.

4. The defendant also maintains that the case of *Albert E. Touchet, Inc.* v. *Touchet,* 264 Mass. 499, controls the instant case and requires a holding that "the . . . [plaintiffs], by their conduct, have forfeited the right to specific performance." In the *Touchet* case the corporation was given the right of first refusal to purchase the shares of a deceased shareholder. By leaving such an option in the corporation the parties to that agreement must have contemplated that the holders of a majority of shares, even the representatives of the estate of a deceased shareholder, could exercise their power to prevent the purchase of such shares by the corporation. In the instant case the agreement to buy and sell the stock was, by its terms, mandatory. The defendant was not entitled to exercise his power as a majority shareholder to abrogate the clear mandate of the agreement.

5. It is also contended by the defendant that " [i]n order to justify a decree of specific performance, the burden is on the . . . [plaintiffs] to prove that the [C]orporation can purchase its own shares without prejudice to its stockholders and creditors," citing such cases as *Winchell* v. *Plywood Corp.* 324 Mass. 171, 178–179. It is true that in the *Winchell* case we stated on page 178, that " [w]hile . . . the law in this Commonwealth is settled that a corporation may purchase its own stock, it has been assumed in some of our decisions that this can be done only if there is no prejudice to creditors or stockholders." We note that the defendant in arguing this contention ignores the answer the defendants filed in this suit wherein they state that they were "willing and anxious to sell the stock . . . to the [C]orporation" and that this "would not be to the detriment of the [C]orporation, but on the contrary would be of mutual benefit." This would seem to dispose of any argument that it was necessary for the plaintiffs to prove that the present payment by the Corporation would not be detrimental to the interest of a stockholder or a creditor.

What the defendant really wants is a guaranty that the Corporation will meet its future obligations to him. An

ordinary instalment creditor has no right to require proof of the ability of his debtor to meet future instalments. If the activities of the Corporation amount to fraudulent conveyances, or other fraudulent behavior, there are adequate means of protecting creditors.[3] It seems to us that the defendant in the instant case should be in no better position with respect to the Corporation than any other creditor. The interest of a creditor in seeing that the Corporation is not rendered insolvent by distributions to shareholders is protected by G. L. c. 156B, § 61.[4] We need not now decide the question as to whether the insolvency test of this section could be applied to each payment by the Corporation under the instalment stock repurchase agreement. See Herwitz, Installment Repurchase of Stock: Surplus Limitations, 79 Harv. L. Rev. 303, 309. The purpose of the statute is to prevent distributions to stockholders such as the defendant which would be prejudicial to creditors of a corporation. The possibility that the defendant may be harmed in the future by the operation of this statute does not entitle him to receive special treatment.

### The Plaintiffs' Appeal.

1. The final decree calls for interest to be paid annually on the total agreed price of $157,898.75 instead of upon the unpaid balance, as set out in the judge's report. We agree with the plaintiffs that "the decree should provide for interest only on the unpaid balance" and the decree should be modified accordingly.

2. The agreement is silent as to the time at which the shares are to be transferred to the Corporation. However, it does provide that the individual parties "agree for themselves and for their heirs, executors and administrators to sell, and the Corporation agrees to buy such shares of the

---

[3] E.g. G. L. c. 109A; c. 156B, § 105.

[4] The section states in material part that directors are liable for authorizing "any distribution by the corporation to one or more of its stockholders, whether by way of dividend, purchase of its own stock or otherwise . . . if the corporation is, or is thereby rendered, insolvent or bankrupt."

Corporation as shall be registered in the name of such individuals at the time of their respective deaths." Paragraph 3 of the agreement provides only that the "Corporation shall pay the purchase price . . . in ten equal annual instalments." No similar provision is made for the transfer of the stock in ten equal annual instalments. It was within the power of the parties to secure the performance by the Corporation of its obligation to make annual instalment payments for the stock, but the agreement is utterly devoid of such a provision. We are of opinion that all of the shares were to be delivered to the Corporation upon its tender of the first instalment.

We are not impressed with the defendant's argument that his "position as a fiduciary appointed by the Probate Court should be considered." *Forbes* v. *Allen,* 240 Mass. 363, 366, cited by the defendant, is not in point. The defendant here is being asked to perform a contract of his intestate according to its terms, not to compromise the terms of a contract, as the fiduciary in the *Forbes* case did. Nor do we think it is inequitable or unfair to enforce this contract according to its terms. The ease with which a provision could have been inserted in the agreement which would have required the Corporation to furnish security for the payment of the stock to the estate of a deceased stockholder is a strong indication that the parties had no such intention.

3. The decree is to be modified by (1) providing that interest shall be payable only on the unpaid balance of the agreed price for the stock, (2) ordering the Corporation to pay the annual instalments as they fall due, with interest as herein provided, and (3) ordering that the defendant forthwith transfer to the Corporation all shares held by him as the representative of the estate of the deceased stockholder and, as so modified, is affirmed.

*So ordered.*