**CONCORD AUTO AUCTION, INC. and E.L. Cox Associates, Inc., Plaintiffs,**

v.

**Lawrence H. RUSTIN, as he is Administrator of the Estate of E. Leroy Cox, Defendants.**

**Civ. A. No. 84–3659–Y.**

United States District Court, D. Massachusetts.

Feb. 13, 1986.

David S. Rosenthal, Hutchins & Wheeler, Boston, Mass., for plaintiffs.

Rosemary Wilson, Herrick & Smith, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

Close corporations, Concord Auto Auction, Inc. ("Concord") and E.L. Cox Associates, Inc. ("Associates") brought this action for the specific performance of a stock purchase and restriction agreement (the "Agreement"). Concord and Associates allege that Lawrence H. Rustin ("Rustin") as the administrator of E.L. Cox's estate ("Cox") failed to effect the repurchase of Cox's stock holdings as provided by the Agreement. The Court has jurisdiction pursuant to 28 U.S.C. 1332(a)(1) because Rustin, a Connecticut citizen, is properly diverse to Concord and Associates, Massachusetts corporations with principal places of business in the Commonwealth.

Rustin alleges in his defense that Concord and Associates are not entitled to specific performance because 1) they have breached the Agreement which they seek to enforce; 2) they have unclean hands because they failed to effect a review and revaluation of the shares; 3) the value of the stock increased so substantially that specific enforcement would be unfair and unjust to Cox's estate; and 4) specific performance is conditional upon an annual review of share value to be held no later than the third Tuesday of February, here February 21, 1984.

Rustin alleges that all parties intended an annual revaluation, that Betsy Cox Powell ("Powell") and Nancy Cox Thomas ("Thomas"), sisters of the decedent Cox, as the only other shareholders in both Concord and Associates, knew that a revaluation would result in a higher price and failed to effect the annual review required by the Agreement, that this failure breached the Agreement and was "undertaken with the intent and effect of depriving the estate of E. Leroy Cox from receiving fair value for its shares of Concord and Associates." Rustin further alleges that by failing to establish new prices, Powell in particular as well as Thomas breached their fiduciary duties to the estate of Cox in light of their direct pecuniary interest in the value of the shares. Finally, Rustin alleges that the actions of Powell, Thomas, Concord and Associates constitute a willful violation of Mass.Gen.Laws, ch. 93A, § 11.

Concord and Associates move for summary judgment, specific performance of the Agreement and dismissal of the counterclaims. Pursuant to Fed.R.Civ.P. 56, the Court will treat the motion for dismissal as a motion for summary judgment because the Court has gone beyond the pleadings to consider various affidavits and exhibits. For the reasons set forth below, the Court allows the motions for summary judgment.

### I. Background

Both Concord and Associates are Massachusetts Corporations. Concord operates a used car auction for car dealers, fleet operators, and manufacturers. Associates operates as an adjunct to Concord's auction business by guaranteeing checks and automobile titles. Both are close corporations with the same shareholders, all siblings: Cox (now his estate), Powell, and Thomas. At all times relevant to this action, each sibling owned one-third of the issued and outstanding stock in both Concord and Associates.

To protect "their best interests" and the best interests of the two corporations, the three shareholders entered into a stock purchase and restriction agreement on Febru-

ary 1, 1983. The Agreement provides that all shares owned by a shareholder at the time of his or her death be acquired by the two corporations, respectively, through life insurance policies specifically established to fund this transaction. This procedure contemplates the "orderly transfer of the stock owned by each deceased Shareholder." At issue in the instant action are the prerequisites for and effect of the repurchase requirements as set forth in the Agreement.

This dispute arises because Rustin failed to tender Cox's shares as required by Paragraph 2, *Death of Shareholder*. Rustin admits this but alleges a condition precedent: that Powell, specifically, and Thomas failed to effect both the annual meeting and the annual review of the stock price set in the Agreement as required by Paragraph 6, *Purchase Price*: "Each price shall be reviewed at least annually no later than the annual meeting of the stockholders ... (commencing with the annual meetings for the year 1984) ...," here February 21, 1984. Rustin implies that, had the required meeting been held, revaluation would or should have occurred and that, after Cox's accidental death in a fire on March 14, 1984, Powell in particular as well as Thomas were obligated to revalue the stock prior to tendering the repurchase price.

There is no dispute that the By-Laws call for an annual meeting on the third Tuesday of February, here February 21, 1984. There is no dispute that none took place or that, when Cox died, the stocks of each corporation had not been formally revalued. No one disputes that Paragraph 6 of the Agreement provides for a price of $672.00 per share of Concord and a price of $744.00 per share for Associates. This totals $374,976 which is covered by insurance on Cox's life of $375,000. There is no substantial dispute that the stock is worth a great deal more, perhaps even twice as much. No one seriously disputes that Paragraph 6 further provides that:

> ... all parties may, as a result of such review, agree to a new price by a written instrument executed by all the parties and appended to an original of this instrument, and that any such new price

shall thereupon become the basis for determining the purchase price for all purposes hereof unless subsequently superceded pursuant to the same procedure. The purchase price shall remain in full force and effect and until so changed.

Rustin asserts that the explicit requirement of a yearly price review "clashes" with the provision that the price shall remain in effect until changed. He argues a trial is required to determine the intent of the parties:

> The question then arises, presenting this Court with a material issue of fact not susceptible to determination on a motion for summary judgment: Did the parties intend, either to reset, or at least to monitor, yearly, the correspondence between the Paragraph 6 price and the current value of the companies? If so, who, if anyone, was principally responsible for effecting the yearly review required by the Agreement, and for insuring an informed review?

In answering these questions the Court first outlines its proper role in the interpretation of this contract.

## II. Discussion

A Court sitting in diversity will apply the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), here Massachusetts. In Massachusetts as elsewhere, absent ambiguity, contracts must be interpreted and enforced exactly as written. *Freelander v. G. & K. Realty Corp.*, 357 Mass. 512, 515, 516, 258 N.E.2d 786 (1970). Where the language is unambiguous, the interpretation of a contract is a question of law for the court. *Edwin R. Sage v. Foley*, 12 Mass.App. 20, 28, 421 N.E.2d 460 (1981); *see Robert Industries, Inc. v. Spence*, 362 Mass. 751, 755, 291 N.E.2d 407 (1973). Further, contracts must be construed in accordance with their ordinary and usual sense. *Zarum v. Brass Mill Materials Corp.*, 334 Mass. 81, 84, 134 N.E.2d 141 (1956); *Edwin R. Sage v. Foley*, 12 Mass.App. at 28, 421 N.E.2d 460.

Contrary to Rustin's assertion, the Court in applying these standards holds that

there is no ambiguity and certainly no "clash" between the dual requirements of Paragraph 6 that there be an annual review of share price and that, absent such review, the existing price prevails. When, as here, the Court searches for the meaning of a document containing two unconditional provisions, one immediately following the other, the Court favors a reading that reconciles them. *Kates v. St. Paul Fire & Marine Ins. Co.,* 509 F.Supp. 477, 485 (D.Mass.1981). The Court rules that the Agreement covers precisely the situation before it: no revaluation occurred, therefore the price remains as set forth in the Agreement. This conclusion is reasonable, for the Agreement is not a casual memorialization but a formal contract carefully drafted by attorneys and signed by all parties.

Moreover, the Court interprets Paragraph 2 to provide, in unambiguous terms:

"In the event of the death of any Shareholder subject to this agreement, his respective ... administrator ... *shall,* within sixty (60) days after the date of death ... give written notice thereof to each Company which notice *shall* specify a purchase date not later than sixty (60) days thereafter, *offering to each Company for purchase* as hereinafter provided, and *at the purchase price set forth in Paragraph 6,* all of the Shares owned on said date by said deceased Shareholder...." [Emphasis by the Court].

Rustin, therefore, was unambiguously obligated as administrator of Cox's estate to tender Cox's shares for repurchase by Concord and Associates. His failure to do so is inexcusable unless he raises cognizable defenses.

All of Rustin's defenses turn on two allegations: that his performance is excused because the surviving parties failed to review and to adjust upward the $374,976 purchase price. Rustin contends that the parties meant to review the price per share on an annual basis. No affidavit supports this assertion, nor does any exhibit. In fact, absent any evidence for this proposition, Rustin's assertion is no more than speculation and conjecture. While Rustin contends that the failure to review

and revalue constitutes "unclean hands" and a breach of fiduciary duty which excuses his nonperformance, he places before the Court only argument not facts.

It simply does not follow that because a meeting was not held and the prices were not reviewed that a trial of the parties' intentions is required. The Agreement is the best evidence of the parties' intent. Although the text of the Agreement provides that share price "shall" be reviewed "at least annually," the Agreement also states that "The purchase price shall remain in full force and effect unless and until so changed."

Even giving all intendments to Rustin, the "favorable inferences" generally afforded parties opposing summary judgment must be reasonable and based on facts, not conjecture. *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); *see also Buckley v. American Honda Motor Co., Inc.,* 780 F.2d 1, 2 (1st Cir.1985). There must be sufficient evidence supporting the claimed factual dispute to require a trial to resolve the parties' different versions; the evidence manifesting the dispute must be substantial. *Hahn v. Sargent,* 523 F.2d at 464. Although, as the party opposing the motion, Rustin is entitled to inferences from the evidence in the records, *Rogen v. Ilikon Corporation,* 361 F.2d 260, 266 (1st Cir.1966), he "is not entitled to build a case on the gossamer threads of whimsey, speculation and conjecture." *Manganaro v. Delaval Separator Co.,* 309 F.2d 389, 393 (1st Cir.1962). Thus, conclusory allegations unsupported by facts, do not create an issue which should be reserved for trial. *Over the Road Drivers Inc. v. Transport Insurance Co.,* 637 F.2d 816, 818–819 (1st Cir.1980); *Maiorana v. MacDonald,* 596 F.2d 1072, 1078 n. 7 (1st Cir.1979); *Massaro v. Vernitron Corp.,* 559 F.Supp. 1068, 1973 (D.Mass.1983). Rustin presents no evidence that would tend to suggest that Cox intended to depart from or rescind the Agreement. He presents only bare allegations that a revaluation would have occurred had the annual meeting been held.

Even if competent evidence adduced at trial would support Rustin's allegations, his proposition would of necessity require judicial intervention, a course this Court does not favor. Rustin produces not a shred of evidence that the parties intended that a court should intercede to set the share price in the event the parties failed to do so themselves. Every first year law student learns that although the courts can lead an opera singer to the concert hall, they cannot make her sing. *Lumley v. Guy,* 118 Eng.Rep. 749 (1853). While this Court will specifically enforce a consensual bargain, memorialized in an unambiguous written document, it will not order the revision of the share price. Such intrusion into the private ordering of commercial affairs offends both good judgment and good jurisprudence. Moreover, the record before the Court indicates that the parties fully intended what their competent counsel drafted and they signed.

Moreover, the nucleus of Rustin's premise is that somehow Powell should have guaranteed the review and revision of the share prices. On the contrary, nothing in the record indicates that a reasonable trier of fact could find that Powell's duties and responsibilities included such omnipotence. More to the point, the By-Laws suggest that several individuals shared the responsibility for calling the required annual meeting: "In case the annual meeting for any year shall not be duly called or held, the Board of Directors or the President shall cuase (sic) a special meeting to be held...." Pursuant to the By-Laws, Cox himself had the power, right, and authority to call a meeting of the stockholders of both companies, in order to review the price per share—or for any other purpose for that matter.

Furthermore, nothing in the record indicates that somehow Powell, Thomas, Concord, or Associates was charged with the duty of raising the share price. In fact, this is discretionary and consensual: "all parties *may,* as a result of such review, *agree to* a new price by a written instrument *executed by all parties....*" Nowhere can the Court find any affirmative duty to guarantee either an annual meeting or a share price revision. To fault Powell for not doing by fiat what must be done by consensus credits Powell with powers she simply does not have. The mere fact that, as a shareholder of Concord and Associates, Powell benefits from the enforcement of the Agreement at the $374,976 purchase price does not, as matter of law, create an obligation on her part to effect a review or revision of the purchase price. One cannot breach a duty where no duty exists, and Rustin cannot manufacture by allegation a duty where neither the Agreement nor the By-Laws lends any support.

Applying the above analysis, the Court discounts three of Rustin's defenses as meritless: that specific performance is not warranted because Concord and Associates breached the Agreement they seek to enforce; that they have unclean hands because they failed to effect a review and revaluation of the shares; and that specific performance is conditional upon an annual review of share value to be held no later than the third Tuesday of February. The record demonstrates no evidence that share transfer is conditional, rather it appears absolute and automatic. Absent a duty to "guarantee" the occurrence of the annual meeting or the "review," the Court cannot find that Powell's failure, if any, to upgrade the share price constitutes a fiduciary breach.

Of Rustin's fourth defense, that the value of the stock increased so substantially that specific enforcement would be unfair and unjust to Cox's estate, little need be said. This defense as well as Rustin's counterclaims rest on the allegation that Powell, in particular, and Thomas "knew" that a revaluation would result in a higher price and "failed to effect an annual review." Of Powell, Rustin argues that she had a "special responsibility" to effect a review of the purchase price because her siblings looked to her for financial expertise and to call a meeting. Nowhere is this "special responsibility" supported by the Agreement or the By-Laws. Rustin also implies that the sisters "knew" that failure to revalue would inure to their benefit. This presumes they knew that Cox would

die in an accidental fire three weeks after the deadline for the annual meeting. To call this preposterous understates it, for nothing immunized the sisters from an equally unforeseeable accident. Rustin's argument withers in the light of objectivity to a heap of conclusory straws.

Rustin goes on to argue that the sisters had a fiduciary duty to revalue the shares *after Cox's death* and *before tender.* Nowhere in the Agreement is there the slightest indication they were so obligated. Nowhere is there evidence of willfulness, intent to deceive, or knowing manipulation. As a result, Rustin's counterclaim that the Companies, Powell, or Thomas violated Mass.Gen.Laws, ch. 93A, § 11 must fail.

Agreements, such as those before the Court, "among shareholders of closely held corporations are common and the purpose of such contracts are clear." *Brigham v. M & J Corporation,* 352 Mass. 674, 678, 227 N.E.2d 915 (1967). Moreover, such agreements are valid, bind the stockholder and his administrator or executor, and may be specifically enforced. *Donahue v. Rodd Electrotype Company of New England, Inc.,* 367 Mass. 578, 598, 328 N.E.2d 505 (1975), as limited by *Wilkes v. Springside Nursing Home, Inc.,* 370 Mass. 842, 848–852, 353 N.E.2d 657 (1976); *Smith v. Atlantic Properties, Inc.,* 12 Mass.App. 201, 205–206, 422 N.E.2d 798 (1981). *See Brigham v. M & J Corporation,* 352 Mass. at 678–682, 227 N.E.2d 915; *New England Trust Co. v. Abbott,* 162 Mass. 148, 154–155, 38 N.E. 432 (1894); *see also Renberg v. Zarrow,* 667 P.2d 465, 470 (Okla.1983).

The validity of such agreements will be upheld absent any fraud, overreaching, undue influence, duress, or mistake at the time the deceased entered into the agreement, these conditions rendering the agreement void. *New England Trust Co. v. Abbott,* 162 Mass. at 155, 38 N.E. 432; *see Renberg v. Zarrow,* 667 P.2d at 470. Thus "fairness" and "good faith" in a closely held corporation generally means that each stockholder must have an equal opportunity to sell his or her shares to the corporation for an identical price. *Donahue v. Rodd Electrotype Company of New England, Inc.,* 367 Mass. at 598, 328 N.E.2d

505. The effect of the Agreement is "blind": regardless of who dies first, his or her administrator is required to sell the shares held to the corporations by set procedure for a set price. These circumstances are "fair": "[T]he stipulated price provision wherein no one knows for certain at the time the price is set whether he is to be a buyer or a seller is inherently fair and provides mutuality of risk." *Renberg v. Zarrow,* 667 P.2d at 471.

Moreover, specific performance of an agreement to convey will not be refused merely because the price is inadequate or excessive. *New England Trust Co. v. Abbott,* 162 Mass. at 155, 38 N.E. 432; *see Lee v. Kirby,* 104 Mass. 420, 430 (1870); *Allen v. Biltmore Tissue Corp.,* 2 N.Y.2d 534, 543, 161 N.Y.S.2d 418, 141 N.E.2d 812 (1957) ("The validity of the restriction on transfer does not rest on any abstract notion of intrinsic fairness of price. To be invalid, more than mere disparity between option price and current value of the stock must be shown"); *Renberg v. Zarrow,* 667 P.2d at 470 ("In the absense of fraud, overreaching, or bad faith, an agreement between the stockholders that upon the death of any of them, the stock may be acquired by the corporation is binding. Even great disparity between the price specified in a buy-sell agreement and the actual value of the stock is not sufficient to invalidate the agreement.") The fact that surviving shareholders were allowed to purchase Cox' shares on stated terms and conditions which resulted in the purchase for less than actual value of the stock does not subject the agreement to attack as a breach of the relation of trust and confidence, there being no breach of fiduciary duty. *See id.* at 472.

Rather than evidence of any impropriety, the Court rules that the purchase prices were carefully set, fair when established, evidenced by an Agreement binding all parties equally to the same terms without any indication that any one sibling would reap a windfall. The courts may not rewrite a shareholder's agreement under the guise of relieving one of the parties from the hardship of an improvident bargain. *Id.* at 471

(citations omitted). The Court cannot protect the parties from a bad bargain and it will not protect them from bad luck. Cox, the party whose estate is aggrieved, had while alive every opportunity to call the annual meeting and persuade his sisters to revalue their stock. Sad though the situation be, sadness is not the touchstone of contract interpretation.

Rustin's defenses inadequate and his counterclaims meritless, what remains is the conclusion that all parties, including Cox, failed to revise the $374,976 purchase price. Therefore, the price remains unchanged. The Court rules that it cannot be said that Concord, Associates, Powell, or Thomas breached a fiduciary duty, failed to fulfill a condition precedent, or come before the Court with unclean hands.

### III. Conclusion

In the absence any genuine issues of material fact, Concord and Associates are entitled to judgment as matter of law. The Agreement shall be specifically enforced. Rustin's counterclaims are dismissed and, for the reasons set forth above, the Court ALLOWS Concord's and Associates' motions for summary judgment on all matters. Rustin must sell the Cox shares for the $374,976 purchase price to which all parties agreed. Rustin is hereby ORDERED to:

(1) Deliver the certificates for the Cox shares fully endorsed for purchases pursuant to paragraphs 2 and 6 of the February 1, 1983 Agreement no later than thirty days after the date of this order.

(2) Accept a purchase price of $672.00 per share of Auction and $744.00 per share of Associates as set forth in paragraph 6 of the Agreement.

Beyond these specifications, nothing in this Order shall be construed to modify or invalidate any provision set forth in the Agreement. As a result, all parties must comply with each and every provision of the Agreement, even those not specifically discussed herein.

SO ORDERED.