National Paper & Cordage Co., Inc. *vs.* Atlantic Carton Corporation.

Middlesex. January 7, 1955. — June 7, 1955.

Present: Qua, C.J., Wilkins, Spalding, & Counihan, JJ.

*Evidence,* Extrinsic affecting writing. *Sale,* Parties. *Broker,* What constitutes relation. *Words,* "Discount," "Commission."

In an action for failure of the defendant to deliver to the plaintiff part of an order for chipboard, where the defendant denied liability on the ground that the plaintiff was acting as a broker for and not a contracting party with the defendant and there was ambiguity in the word "commission" in the plaintiff's order asking the defendant to ship the chipboard "in our name" to a specified mill at a stated price "less 5% commission" and in the defendant's acknowledgment of the order on a form designating the plaintiff as the customer and stating the same price "less 5% comm.," it was reversible error to exclude parol evidence offered by the defendant to show that the plaintiff was acting as a broker for the defendant and was to "get 5%."

Contract. Writ in the Superior Court dated March 14, 1951.

The action was tried before *Dowd, J.*

*Solomon Rosenberg,* for the defendant, submitted a brief.

*Paul L. Keenan,* (*Joseph Aborn* with him,) for the plaintiff.

SPALDING, J.   The plaintiff brought this action of contract alleging that the defendant had failed to deliver sixty-five tons of chipboard.   The defendant filed a declaration in set-off.   The case was tried to a jury who returned a verdict for the plaintiff, and found for the defendant (original plaintiff) on the declaration in set-off.   The case comes here on the defendant's exceptions to the exclusion of certain evidence, to the denial of its motion for a directed verdict, and to the denial of its motion for a new trial.

The pertinent evidence was as follows:  The plaintiff on July 11, 1950, ordered one hundred ten tons of chipboard from the defendant on a purchase order which stated that it was to be shipped "in our name to Manchester Hosiery Mills, . . . Manchester, N. H. . . . @ 75.00 per ton del'd Less 5% Commission."   On July 14 the plaintiff ordered fifty tons of chipboard from the defendant on a purchase order similar to the earlier one, except that the merchandise was to be shipped to the Manchester Knitting Mills, in Manchester, New Hampshire.   The price stated in the order was $75 "per ton del'd Less 5% Commission."   Each of these orders was acknowledged by the defendant on a form entitled "Acknowledgment of Order."   In each acknowledgment the plaintiff was designated as the customer and beside the word "Remarks" appeared the following: "@ $75.00 a ton less 5% comm."   Just below appeared the following imprint from a rubber stamp:  "This order accepted subject to price in effect at date of shipment."

Of the one hundred sixty tons called for by these orders the defendant shipped ninety-five.   On November 3, 1950, the defendant wrote to the plaintiff stating that since it had learned the mills (Manchester Hosiery and Manchester Knitting) had cancelled "the unfilled balances on their orders" it considered "the balances cancelled on our orders to the above concerns from you."   The plaintiff, on December 2, 1950, requested the defendant to ship the undelivered balance of sixty-five tons to its place of business in Cambridge, Massachusetts.   This was not done.   As of November 3, 1950, the price of chipboard had increased to

$95 per ton. With respect to these orders credit was extended to the plaintiff and the defendant "had nothing to do with collecting from the" mills.

It was the defendant's contention that the plaintiff was acting as its broker and was not a contracting party. One O'Brien, the defendant's manager, was asked to state a conversation he had had with one Cubell, president and treasurer of the plaintiff, prior to the transactions in question, but the question was excluded on the ground that "Any talk previous to the execution of that contract . . . [was] incompetent." The defendant then made the following offer of proof: "That at the time when . . . [it] first began doing business, Mr. Cubell came to the . . . [defendant] and requested the privilege of doing business with it as a broker; that he asked as to the method in which business would be done, and he was told it was to be done by his taking the order and being responsible for the price for which he would get 5%; [and] that shipments would be made to the particular customer requiring the paper board." To the exclusion of this evidence the defendant excepted.

We are of opinion that this evidence ought to have been admitted. Some of the evidence, it is true, indicates that the transaction was a contract of sale between the defendant and the plaintiff. For example, the purchase orders sent by the plaintiff asked the defendant to "ship [the merchandise] in our name" to the mills in Manchester. The acknowledgments referred to the plaintiff as the customer, and in fact all bills for the goods were sent to the plaintiff and paid by it. On the other hand both the purchase orders and the acknowledgments stipulated a price less five per cent commission. Where goods are sold directly to a consignee "discount" rather than "commission" is the word ordinarily employed; "commission" generally denotes the compensation which an agent receives on sales. *Cox* v. *Savage*, 209 Mass. 501, 508. *Avondale Mills* v. *Benchley Brothers, Inc.* 244 Mass. 153, 159. The word "commission" used by the parties in the orders and acknowledgments was ambiguous. It might have been used as the equivalent of

"discount," or it might have been used to denote the compensation which the plaintiff was to receive as broker. Whether the plaintiff was a broker or a contracting party was an important issue in the case. It was open to the defendant, therefore, to introduce parol evidence to clear up the ambiguity and show what the actual relationship between the parties was. *Stoops* v. *Smith*, 100 Mass. 63. *Kennedy Bros. Inc.* v. *Bird*, 287 Mass. 477, 483. *LaCouture* v. *Renaud*, 325 Mass. 33, 37.

There was no error in the denial of the defendant's motion for a directed verdict. If the relationship between the parties was that of principal and agent the defendant would not have been liable. But if the relationship was that of contracting parties the defendant might have been liable. Whether it was one or the other was a question of fact for the jury under appropriate instructions.

Since there must be a new trial there is no need to discuss the exception to the denial of the defendant's motion for a new trial; nor is it necessary to discuss the other exceptions of the defendant, as the questions presented may not arise at a retrial of the case.

*Exceptions sustained.*