EDWIN R. SAGE COMPANY *vs.* JOAN L. FOLEY & another, trustees.[1]

Suffolk.  March 16, 1981. — June 2, 1981.

Present: HALE, C.J., GREANEY, & KASS, JJ.

*Practice, Civil,* Interlocutory appeal, Injunction. *Injunction. Landlord and Tenant,* Covenant against competition.

On a petition brought under G. L. c. 231, § 118, first par., for relief from a Superior Court order denying a preliminary injunction, a single justice of this court has the authority to modify the order to grant the requested injunction.  [22-25]

In an action by the operator of a retail food store to enforce a provision in its lease which prohibited the lessor from renting any other space to a lessee whose principal business was selling retail food products unless the space was leased "for the operation of a single supermarket by a . . . company which operates ten (10) or more outlets," a single justice of this court, acting on a petition brought by the plaintiff under G. L. c. 231, § 118, first par., for relief from a Superior Court order denying a preliminary injunction, properly enjoined the lessor from leasing space for a supermarket to a company which operated nine outlets and which planned to make the leased space its tenth store.  [25-30]

CIVIL ACTION commenced in the Superior Court Department on September 5, 1980.

A petition filed in the Appeals Court on November 4, 1980, was heard by *Perretta,* J.

*Robert M. Gault (Elizabeth B. Burnett* with him) for the defendants.

*Robert T. Harrington* for the plaintiff.

GREANEY, J.  Edwin R. Sage Company (Sage) operates a retail food store in Belmont in premises leased from the defendant trustees.  Sage's lease contains a covenant which

---

[1] Richard G. Mintz.  The defendants are the trustees of the Albert J. Locatelli Realty Trust.

prohibits the trustees, as long as the lease remains in effect, from renting or leasing any other space to another tenant or lessee whose principal business is selling retail food products unless the space is leased "for the operation of a single supermarket by a so-called 'chain' supermarket company which operates ten (10) or more outlets . . . ." Other tenants or lessees are permitted, however, to sell food or food products for on-premises consumption or as an incidental part of their main business. Sage alleged in its amended complaint in the Superior Court, in applying for a preliminary injunction, that the trustees intended to commit a breach of the covenant by leasing certain premises (recently vacated by First National Stores) to a chain (Foodmaster Supermarkets, Inc.) which currently operates nine stores. The complaint also alleged that the trustees had executed or were about to execute, certain documents with Foodmaster in contemplation of a formal lease. The trustees argued in the Superior Court that the covenant's provisions allowed them to lease to a chain which plans to make Belmont its tenth store, while Sage claimed that the covenent requires a prospective lessee to have ten stores in operation before executing a lease for Belmont. A judge of that court denied Sage's application for a preliminary injunction which would have restrained the Foodmaster lease pending a trial on the merits. A single justice of this court, acting on Sage's petition under G. L. c. 231, § 118, first par., modified the Superior Court's order to enjoin the trustees "from renting or leasing any of the premises . . . to Foodmaster Supermarkets, Inc., or any other person or entity who or which intends to use said premises for the principal business of selling at retail fish, meat, groceries, provisions or other related products, unless the prospective tenant is operating at least ten other supermarket outlets for the retail sale of such products, exclusive of an outlet at the premises . . . ." The single justice authorized the trustees to pursue an interlocutory appeal from her order. *Corbett* v. *Kargman*, 369 Mass. 971 (1976), and cases cited. There are two questions raised on this appeal: (1) whether a single justice of this court may, on a

petition brought under G. L. c. 231, § 118, first par., for
relief from a Superior Court order denying a preliminary in-
junction, modify the order to grant the requested injunc-
tion, and if so, (2) whether the single justice's order in this
case was proper. We answer both questions in the affirma-
tive.[2]

1. *The question of authority.* On a petition filed pursu-
ant to G. L. c. 231, § 118, first par. (as appearing in
St. 1977, c. 405, and as read in conjunction with G. L.
c. 231, § 117, as appearing in St. 1973, c. 1114, § 202), a
single justice possesses "broad discretion" to modify, annul
or suspend the execution of *any* interlocutory order entered
in the Superior Court. *Packaging Indus. Group, Inc.* v.
*Cheney,* 380 Mass. 609, 614 (1980). See also *Rollins En-
vironmental Servs., Inc.* v. *Superior Court,* 368 Mass. 174,
181 (1975). Section 117, which formulates the substantive
basis for a single justice's authority under § 118, first par.,
continued in force all the material aspects of the power
which had been previously conferred upon a single justice
under the provisions of G. L. c. 214, § 22 (as amended by
St. 1948, c. 309), read in conjunction with G. L. c. 214, § 26
(as in effect prior to St. 1973, c. 1114). See *Demoulas Super
Mkts., Inc.* v. *Peter's Mkt. Basket, Inc.,* 5 Mass. App. Ct.
750, 752 n.3 (1977); *Schlager* v. *Board of Appeal of Boston,*
9 Mass. App. Ct. 72, 76 n.10 (1980). Under prior equity
practice, § 22 and the rules supplementary thereto were
viewed as a source of authority for an order of the nature
entered in this case. See *Boston Edison Co.* v. *Sudbury,* 356
Mass. 406, 409 (1969); Rule 2:01 of the Appeals Court, 1

---

[2] We can eliminate at this point Sage's contention that the appeal
should be dismissed because an order by a single justice passing on an in-
terlocutory order of the lower court is not reviewable. The single justice's
certification of an interlocutory appeal properly brings the enumerated
questions before us. We also reject the trustees' argument that Sage's
recourse to the single justice amounted to an appeal under the second
paragraph of § 118 which was not seasonable because it was not claimed
within thirty days of the entry of the order of the Superior Court. The
papers leave no doubt that Sage was proceeding at all pertinent times
under the first paragraph of § 118.

Mass. App. Ct. 896 (1972), as in effect until July 1, 1974, although not formally amended until February 27, 1975, 3 Mass. App. Ct. 801, 805. See also *Lowell Bar Assn.* v. *Loeb*, 315 Mass. 176, 189-190 (1943); *Carlson* v. *Lawrence H. Oppenheim Co.*, 334 Mass. 462, 465 (1956); *Stow* v. *Marinelli*, 352 Mass. 738, 744 (1967); *Brown* v. *Massachusetts Port Authy.*, 371 Mass. 395, 402 (1976); Reed, Equity Pleading and Practice § 1077 (1952); Henn, Civil Interlocutory Appeals in the Massachusetts State Courts, 62 Mass. L. Q. 225, 227-228 (1977). Reported cases directly discussing the subject are, as would be expected, rare, undoubtedly because the single justices have exercised their discretion sparingly and only in situations where a petitioner has shown clear entitlement to relief. Nevertheless, an examination of pertinent dockets in this court reveals that our single justices have consistently and uniformly interpreted both § 118, first par., and the predecessor statutes, together with any coordinating rules (see now Rule 2:01 of the Appeals Court, 3 Mass. App. Ct. 805 [1975]) as conferring the authority to modify lower court orders pertaining to preliminary injunctions in the same respect as was done here. We think it would be anomalous for an appellate court to have the power to suspend or annul an order granting injunctive relief, but not to have the power to order it, when the underlying purpose and effect in either case is to avoid an irremediable change in the status quo pendente lite. Even apart from statute and rule, the power to make necessary changes in interlocutory lower court injunctive orders under a system of informal expedited review would appear to be an inherent power of an appellate court if it is to discharge its functions properly. Cf. *Foreign Auto Import, Inc.* v. *Renault Northeast, Inc.*, 367 Mass. 464, 469 (1975).

Additional support for the existence of this power can be found in Mass.R.A.P. 6(a) and (b), as appearing in 378 Mass. 930 (1979), and in the Legislature's recent amendment of § 118 (see St. 1981, c. 84, approved April 13, 1981), to make its provisions applicable to interlocutory orders, including

orders disposing of preliminary injunction applications, entered in a Probate Court. Rule 6(a) provides that a party who has claimed an appeal may apply to the appellate court or to a single justice thereof "for an order suspending, modifying, restoring or granting an injunction during the pendency of an appeal." 378 Mass. 930 (1979). Thus, a party who considers himself aggrieved by an order issuing or denying an injunction in the lower court can claim an appeal under the second paragraph of § 118 and Mass.R.A.P. 3(a), as amended by 378 Mass. 927 (1979), and immediately move for relief from the order pending appeal before a single justice by bringing a motion under rule 6(a). Considering that orders granting or denying preliminary injunctions are often dispositive of a case, we do not think that the right to prompt review of those orders should turn on whether a piece of paper (i.e., notice of appeal) has been filed in the trial court. Moreover, the passage of St. 1981, c. 84, broadening the scope of § 118, is indicative of a legislative view that the practical administration of justice requires an efficient informal remedy for the review of interlocutory orders disposing of injunction requests made in all of the departments of the Trial Court empowered to grant injunctions. See also St. 1980, c. 539, § 11, amending G. L. c. 262, § 4. The statutes and rules regulating appellate procedure and rights "should be read with the aim of finding consistency rather than conflict" in light of "the background of cooperation between the judiciary and the Legislature." *Boston Seaman's Friend Soc., Inc.* v. *Attorney Gen.*, 379 Mass. 414, 416 (1980). We believe that the intended purpose of the first paragraph of § 118, to provide "expeditious relief when circumstances warrant" (*Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. at 615), is best served by a construction which equips the single justice with the necessary tools to deal with a meritorious petition.[3] As for the notion that the single

---

[3] It is worth noting that the opportunity for review of injunctive orders in the single justice session under the first paragraph of § 118 will make the most efficient use of the limited judicial resources available to the appellate courts by avoiding in many cases an unwarranted appeal to a panel under the second paragraph. Conservation of judicial resources is

justice sessions will be turned into morning after motion sessions, we need only repeat that the explicated power will be exercised in a stinting manner with suitable respect for the principle that the exercise of judicial discretion circumscribes the scope of available relief.[4]

2. *The merits.* A trial court's decision to issue or deny a preliminary injunction requires "an evaluation in combination of the moving party's claim of injury and its chance of success on the merits. If there is a substantial risk of irreparable harm to the moving party, it must be balanced against any similar risk to the other party in the light of the chance of each party to succeed on the merits." *Commonwealth* v. *County of Suffolk,* 383 Mass. 286, 288 (1981), citing *Packaging Indus. Group, Inc.* v. *Cheney, supra* at 617. See *Westinghouse Bdcst. Co.* v. *New England Patriots Football Club, Inc.,* 10 Mass. App. Ct. 70, 72 (1980). "Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue." *Packaging Indus. Group, Inc.* v. *Cheney, supra* at 617.

Appellate review of a trial court order disposing of a preliminary injunction application, either by a panel of this court or by a single justice acting on a petition under the first paragraph of G. L. c. 231, § 118, focuses on whether the trial court abused its discretion — that is, whether the court applied proper legal standards and whether the record discloses reasonable support for its evaluation of factual questions. *Id.* at 615-616. This analysis calls for an examination of the same factors properly considered by the judge in

---

important in view of the continuing increase in the number of appeals entered in this court and the corresponding increase in the number of interlocutory appeals entered under the 1977 amendment of G. L. c. 231, § 118, authorizing panel review of those orders. See *Demoulas Super Mkts., Inc.* v. *Peter's Mkt. Basket, Inc.,* 5 Mass. App. Ct. at 753 n.5.

[4] The single justice has ample power to impose sanctions on a party who presents a groundless or frivolous petition under the first paragraph. See G. L. c. 231, § 6F, inserted by St. 1976, c. 233, § 1; *Compugraphic Corp.* v. *DiCenso,* 11 Mass. App. Ct. 1020 (1981).

the trial court in the first instance. His conclusions of law are subject to broad review and will be reversed if incorrect. While weight will be accorded to his exercise of discretion, an order predicated solely on documentary evidence permits the appellate court to draw its own conclusions from the record. *Id.* at 616. As stated earlier, however, since our commissions do not authorize us to sit as trial judges, we must exercise special care not to substitute our judgment for that of the trial court where the records disclose reasoned support for its action. Nevertheless, the *Packaging Indus.* opinion makes clear that the appellate court's powers are not limited to "the rare cases when a [trial] judge has misunderstood the law or transcended the bounds of reason" (*id.* at 615, quoting from *Omega Importing Corp.* v. *Petri-Kine Camera Co.*, 451 F.2d 1190, 1197 [2d Cir. 1971]), that the appellate function calls for the exercise of independent judgment, and that relief should be granted if the aggrieved party is in justice entitled thereto.

Sage's application for a preliminary injunction was heard in the trial court on its amended complaint, which included a copy of the lease, an affidavit of one of the trustees, copies of correspondence between the parties, memoranda of law, and arguments and representations of counsel. These materials summarize the commercial setting for Sage's lease and the insertion of the restrictive covenant. They indicated that Sage has been a tenant in the premises for over forty years, that the restrictive covenant was first introduced in a 1966 lease, and that it was continued in subsequent leases to protect Sage from a prescribed level of competition which would be generated by the location of a food market nearby which is operated by a smaller chain. Since Sage had originally sought a covenant which would prohibit rental to any owner-operated supermarket, it can be inferred that the existing covenant was the result of negotiated compromise between the parties. The submissions before the Superior Court also described the hasty and unanticipated closing of all the First National outlets in Massachusetts, including the one in Belmont Center, the course of un-

successful efforts between Sage and the trust to conclude a lease for the vacant store, and the fruitful negotiations between the trust and Foodmaster. The affidavit of one of the trustees expressly represented that the vacant store would not "be opened by a tenant to the public as a food store until that tenant is operating that store as part of a chain of at least ten stores." It went on to state: "[A]ny lease into which [the trust] enters with a tenant will effectuate that policy and will preclude the tenant from operating the store in derogation of that intent. This procedure carries out the full purpose and spirit of the restrictive covenant and affords Sage the protection it bargains for and seeks." The trial court issued a written order which expressly predicated its denial of a preliminary injunction on the foregoing statement from the trustees' affidavit.

Neither party appears to have argued below (nor does either claim here) that the covenant suffers from any ambiguity which would justify disregarding its integration clause to admit parol evidence of the circumstances in which the lease was negotiated (see *Stoops* v. *Smith,* 100 Mass. 63, 65-67 [1868]; *National Paper & Cordage Co.* v. *Atlantic Carton Corp.,* 332 Mass. 651, 653-654 [1955]; *Robert Indus., Inc.* v. *Spence,* 362 Mass. 751, 753-754 [1973]) or of any special construction placed on it by the parties themselves (see *Pittsfield & No. Adams R.R.* v. *Boston & Albany R.R.,* 260 Mass. 390, 397-398 [1927]; *Cooley* v. *Bettigole,* 1 Mass. App. Ct. 515, 520-521 [1973]). In these circumstances, we believe that the trial court's written order expressed preliminary rulings of law that the covenant was unambiguous and that the trustees' interpretation of it was the correct one. These rulings were subject to broad review by the single justice. Furthermore, since the matter was heard by her on essentially the same documentary record as was considered below,[5] she was entitled to draw her

---

[5] No testimony was taken in the trial court and the only added material before the single justice was excerpts from a deposition of a representative of Foodmaster which confirmed the undisputed facts that it intended to

own conclusions. *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. at 615. See *Hiller* v. *Submarine Signal Co.*, 325 Mass. 546, 549, 551 (1950); *Brophy* v. *School Comm. of Worcester*, 6 Mass. App. Ct. 731, 733 (1978). Her determinations that the covenant appears at this stage to be unambiguous, that the materials submitted by the trustees offered no independent basis for its interpretation, and that the relevance of those materials was dependent on the adoption of the trustees' meaning of the covenant, were proper. It is settled that interpretation of unambiguous language in a written contract is a question of law for the court. See, e.g., *Sparks* v. *Microwave Associates, Inc.*, 359 Mass. 597, 600 (1971), and if the words of a contract are plain and free from ambiguity, they must be construed in accordance with their ordinary and usual sense. *Ober* v. *National Cas. Co.*, 318 Mass. 27, 30 (1945). *Beal* v. *Stimpson Terminal Co.*, 1 Mass. App. Ct. 656, 659 (1974). The fact that the covenant's dispositive language ("which operates ten [10] or more outlets") is framed in the present and not the future tense supports Sage's construction, and indicates probable error in the trial court's threshold ruling to the contrary. Compare *Forte* v. *Caruso*, 336 Mass. 476, 479-480 (1957); *Freelander* v. *G. & K. Realty Corp.*, 357 Mass. 512, 515-516 (1970). We realize, of course, that this picture might change when the issues are studied in the context of a full trial and that the trustees might ultimately prevail on the equitable construction they presently urge. Our determination, like that of the single justice, is not to be taken as foreclosing further consideration of the case on the merits. Nevertheless, there is enough in the present record to establish that Sage's chances of success on the merits are good and to indicate a likelihood that Sage will obtain a permanent injunction which enforces the covenant according to its terms for the life of the lease. See *R. M. Sedrose, Inc.*

lease the store immediately, and that certain documents had been executed by the trustees and Foodmaster confirming a formal lease which were being held in escrow pending the disposition of the § 118 petition.

v. *Mazmanian*, 326 Mass. 578, 581 (1950); *Schwartz*, Lease Drafting in Massachusetts § 4.3, at 95 n.3 (1961).

The question of hardship involved balancing competing hardships between the parties. It appears that the Superior Court judge did not reach this issue because of his construction of the covenant. The single justice might have remanded the matter to the judge below for his consideration of the question, but because the case was before her on documentary evidence and because Foodmaster's occupation of the store seemed imminent, she was not required to do so. We believe that the determination that the balance of hardships cut in Sage's favor is justified. The preservation of legitimate economic expectations pending the opportunity for trial is a basis for granting preliminary injunctive relief. See *Semmes Motors, Inc.* v. *Ford Motor Co.*, 429 F.2d 1197, 1205-1206 (2d Cir. 1970). Sage bargained for competition from a large chain and not from a smaller enterprise which might have many product lines like its own, and the potential competitor's number of outlets in actual operation divided the permissible from the impermissible. A remedy which leaves Sage to remove an on-going business and to seek damages for diminished profits, if it is ultimately determined that the injunction was wrongfully withheld, is of dubious efficacy. Any harm that the trustees might incur is primarily of the sort that can be adequately redressed by an order under Mass.R.Civ.P. 65(c), 365 Mass. 833 (1974), requiring Sage to post security.[6] In these circumstances, the preferred remedy is one which will not require "costly changes in existing operations" of the parties (*Omega Importing Corp.* v. *Petri-Kine Camera Co.*, 451 F.2d at 1197) and which preserves in so far as possible the existing state of affairs pending a full trial.[7] See *Packaging Indus. Group,*

---

[6] It appears, as well, that First National remains liable to the trustees for payments under the existing lease.

[7] The risk that a party will suffer irreparable harm between the preliminary injunction stage and entry of final judgment may be avoided by consolidating the trial on the merits with the preliminary hearing on the application for an injunction. See Mass.R.Civ.P. 65(b)(2), 365 Mass.

*Inc.* v. *Cheney*, 380 Mass. at 616. We conclude that Sage was entitled to a preliminary injunction and that the single justice's action in modifying the trial court's order denying that injunction was proper.

*Order affirmed.*

833 (1974). There was no request for consolidation made in this case. Furthermore, a claim of irreparable harm may be minimized if the merits of the case can be disposed of before any injury occurs. See generally 11 Wright & Miller, Federal Practice and Procedure § 2948, at 431-441 (1973). The parties gave no indication here that the case could be resolved quickly, and, for all that appears in the record, the litigation will proceed along the usual track to a full trial on its merits. There was no basis, therefore, for concluding that an expedited disposition might occur, and even if there were such a basis it would not be sufficient in our opinion to justify altering the present status quo.