Fremont-Smith, J.
Plaintiff Bruce McNeill (“Professor McNeill”) brought this action after the Board of Trustees revoked his tenure at New England School of Law (“NESL”). Professor McNeill has moved for a preliminary injunction, seeking to be reinstated as a tenured professor at NESL. Although the court finds that Professor McNeill has shown a likelihood that his tenure was wrongfully revoked, the court nevertheless denies the requested injunction, as the plaintiff has failed to show a threat of immediate irreparable injury sufficient to justify the drastic remedy of a preliminary mandatory injunction.
BACKGROUND
Professor McNeill has been tenured at NESL since 1977. In October of 1993, Professor McNeill was serving as Chair of NESL’s Placement Committee. He submitted the year-end report of that committee (“the report”) to NESL’s Dean, John O’Brien (“Dean O’Brien” or “the Dean”). On November 11, 1993, the Board of Trustees requested that Dean O’Brien investigate the authenticity of the report. Dean O’Brien then met with Professor McNeill to discuss what the Dean considered to be untrue and misleading statements of fact contained in the report. When that attempt to resolve the matter failed, Dean O’Brien requested that the faculty Retention, Promotion and Tenure Committee (‘Tenure Committee”) convene to consider the Dean’s request for revocation of Professor McNeill’s tenure. The Dean notified Professor McNeill that effective January 1, 1994, he was suspended with pay pending the proceedings for withdrawal of tenure, that his spring semester classes had been reassigned, that he was barred from entering NESL, and that he was to remove his personal property from the law school.
On January 7, 1994, McNeill filed the instant action along with a motion for preliminary injunctive relief, seeking to prevent NESL from suspending him pending hearings before the Tenure Committee. On January 13, 1994, the Court denied Professor McNeill’s motion on the grounds that McNeill’s suspension posed little risk of irreparable harm. In its brief to the Court opposing Professor McNeill’s motion for preliminary relief, NESL stated, inter alia, that “the decision as to whether or not tenure should be withdrawn is to be made by the faculty of New England School of Law. The decision made by the faculty ‘is entitled to stand even if it appears to have been misguided, unless it was sex biased [or based on other prohibited motives].’ ” [Defendant’s Brief, dated January 7, 1994, at 5 (citation omitted).]
The Tenure Committee met on February 11 and February 22, 1994 to take evidence on cause for the withdrawal of McNeill’s tenure. The Dean, Professor McNeill and the faculty were each represented by counsel, and each party was allowed to present evidence and to cross examine witnesses. On April 14, 1994, theTenure Committee delivered a written report to the Dean, which stated that the Committee had reviewed the evidence in the light most favorable to the charging party [the Dean] and found that “there was insufficient cause for revocation of tenure.”
Dean O’Brien forwarded the Tenure Committee’s report and a transcript of the evidence of the hearings to the Board of Trustees, along with his recommendation that Professor McNeill’s tenure be revoked. On May 19, the Board of Trustees unanimously voted to revoke Professor McNeill’s tenure and to discharge him as a member of the faculty.
The relevant Faculty Rules, which were adopted by NESL in 1989 and which have been held by the Massachusetts Federal District Court[1] and acknowledged by NESL[2] to be part of each faculty member’s employment contract with NESL, read as follows:
4.8 Withdrawal of Tenure
A. When any information comes to the attention of the Dean regarding any possible grounds for the withdrawal of tenure of a tenured faculty member, the Dean will notify that faculty member to appear in the Dean’s office for a personal conference.
*367 B. If the personal conference does not resolve the matter, the Dean, Chair or any member of the Committee may convene the Committee for the sole purpose of hearing evidence on cause. The Dean or Chair will notify the affected faculty member by certified mail that the Committee will sit to hear evidence related to determining the existence or non-existence of cause . . .
C. After presentation of all the evidence, the Committee shall vote by a simple majority as to whether or not cause exists. If the Committee finds cause, it will adjourn and schedule another meeting to vote on the disposition.
D. The Committee shall meet and vote on whether to recommend withdrawal of tenure or a lesser sanction. The vote required for a recommendation of withdrawal of tenure or such lesser sanction shall be three-fourths of the members of the Committee eligible to vote whether or not present (excluding the faculty member under consideration for withdrawal of tenure and those members on sabbatical leave or leave status). Within a reasonable time after the vote, the affected faculty member will be notified, by certified mail, of the Committee’s decision.
E. If the Committee votes to recommend withdrawal of tenure, the Committee will transmit such recommendation to the Board of Trustees.
F. The following actions will be considered cause for withdrawal of tenure:
(1) Conviction of a felony;
(2) Substantial disregard of academic or professional responsibilities.
DISCUSSION
The allowance of a preliminary injunction rests in the sound discretion of a trial court. Foreign Auto Import, Inc. v. Renault Northeast, Inc., 367 Mass. 464, 472 (1975). To obtain a preliminary injunction, the moving party must first show that there is a likelihood that it would prevail on the merits of its claim at trial. Commonwealth v. Massachusetts CRINC, 392 Mass. 79, 87 (1980). The moving party must also demonstrate that without the requested relief, it would suffer irreparable harm, not capable of remediation by a final judgment in law or equity. Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617 n.11 (1980). The motion judge must then balance these two factors against the showing of irreparable harm which would ensue from the issuance, or denial, of an injunction and the “chance of success on the merits” presented by the non-moving party. Commonwealth v. Massachusetts CRINC, supra at 87. Where the requested relief is not merely prohibitory, but, as here, affirmative or mandatory relief is sought, the burden of proof on the plaintiff is particularly heavy.[3]
Likelihood of Success on the Merits
The crux of Professor McNeill’s complaint is breach of contract, specifically NESL’s alleged breach of Faculty Rule 4.8, quoted above, in its purported revocation of his tenure as a professor.[4] Professor McNeill maintains that, following a vote of insufficient cause to revoke tenure by the Tenure Committee, under Rule 4.8C there can be no further proceedings against him by either the Tenure Committee or the Board of Trustees because the Rule permits the Trustees to consider revocation only if the Tenure Committee has voted that sufficient cause exists. Thus, McNeill argues, NESL breached its contract with him by forwarding the case to the Board of Trustees even though the Tenure Committee had voted that insufficient cause existed to revoke his tenure.
NESL argues first that, despite the conceded fact that the Faculty Rules were intended to comprise part of NESL’s contract with every faculty member (see fn.2, supra), the Board of Trustees is not bound by the Rules because the first sentence on page 1 states that they “govern faculty action only” so are not intended to restrict the powers which the Trustees would otherwise enjoy under their by-laws. The interpretation of unambiguous language in a written contract, however, is ordinarily a question of law for the court, Edwin R. Sage Co. v. Foley, 12 Mass.App.Ct. 20, 28 (1981), and the clear import of the quoted sentence is that the Faculty Rules were intended to apply to faculty action only, as opposed to the actions of other non-faculty employees such as support staff, who are not to be afforded the protections of the Rules.[5] The Court considers NESL’s construction of this sentence, and its assertion that the Trustees were not bound by the Rules, to be strained and implausible, as it would render the faculty protections afforded by the Rules a nullity, permit the Trustees to act with impunity in complete disregard of the very Rules adopted by NESL as an admitted part of the faculty’s contractual rights and violate American Bar Association standard 405 (see below).
NESL next argues that, even if the Board of Trustees is bound by the tenure revocation procedure outlined in Rule 4.8, it has nevertheless followed that procedure because under Rule 4.8C, following a vote by the Tenure Committee that insufficient cause exists to revoke the tenure of a faculty member, the Dean or the Tenure Committee may then forward the matter to the Board of Trustees for further consideration and action.
The Court finds, however, that the Rules do not provide for further action by the Trustees after the Tenure Committee has voted that insufficient cause exists to revoke the tenure of a faculty member. Rule 4.8C explicitly provides for further Trustee action if the faculty finds that sufficient cause does exist to revoke tenure but provides no mechanism for further trustee review or action following a faculty vote against revocation of tenure. Moreover, if the faculty does find *368 cause to revoke tenure, it provides additional protection to the faculty member, as Rule 4.8C provides that “[i]f the [Tenure] Committee finds cause, it will adjourn and schedule another meeting to vote on the disposition.”
A main purpose behind any faculty tenure system is, of course, the protection of tenured faculty. See McConnell v. Howard University, 818 F.2d 58 (D.C. Cir. 1987). To interpret the Faculty Rules as NESL now suggests[6] and to rule, as NESL now suggests, that it is “not bound" by the Rules, would permit the Board of Trustees to completely ignore the vote of the Tenure Committee (as it did, in fact, in this case). Such an interpretation would, in effect, nullify any protection afforded by the Rules, and thus violate the American Bar Association’s Standard 405, which requires a law school to “have an established and announced policy with regard to academic freedom and tenure.” The Court concludes that the clear import Rule 4.8C is that only if the Tenure Committee finds sufficient cause to revoke a faculty member’s tenure may the Trustees proceed to consider revocation. Where, as here, the Tenure Committee has found that insufficient cause exists, the proceedings are terminated.
Accordingly, the Court finds that there is a likelihood that Professor McNeill will succeed on the merits of his breach of contract claim against NESL.
Irreparable Harm
Here, the Court must balance the likelihood of irreparable harm to Professor McNeill if the preliminary injunction is not allowed against the likelihood of serious harm to NESL if the preliminary injunction is allowed. Packaging Industries, supra at 617. Where, as here, mandatory relief is sought, extreme or very serious damage must be threatened which cannot be redressed by money damages. Automatic Radio, supra.
If the Court denies the injunction, the harm to Professor McNeill may indeed be substantial. Yet, there is no showing that plaintiff will be unable to find other employment, or that he cannot be adequately compensated by money damages for any injuries he may sustain. From defendant’s standpoint, the disruption of NESL’s orderly administration of its law school which would probably result from a peremptory reinstitution of plaintiff as a faculty member, might well be considerable. Accordingly, the Court concludes that the showing of. threatened irreparable injury to the plaintiff is insufficient here to justify the issuance of the requested mandatory injunctive relief.
ORDER
For the foregoing reasons, it is hereby ORDERED that plaintiffs motion for a preliminary injunction is DENIED.

 Meehan v. New England School of Law, 522 F.Supp. 484, 486 (D.Mass. 1981), aff'd, 705 F.2d 439 (1st Cir. 1983).

 Defendant’s Brief in Opposition to Plaintiffs Request For Preliminaiy Injunctive Relief, dated January 7, 1994, at 4.

 Mandatory injunctions “are not granted unless extreme or very serious damage will result and are not issued in doubtftil cases or where the injury complained of is capable of compensation in damages." Automatic Radio Mfg. Co. v. Ford Motor Company, 272 F.Supp. 744 (1967).

 The complaint also alleges civil rights violations by NESL. In light of the Court’s findings regarding Professor McNeill’s likelihood of success on his breach of contract claim, the Court need not reach the issue of his likelihood of success on the civil rights claims.

 The Court therefore declines to consider the parol evidence proffered by way of defendant’s affidavits as to the Trustees’ intention not to be bound by faculty action when they voted to approve the Faculty Rules.

 As noted above, NESL, in an earlier brief, took the position that a faculty decision would be binding.