SUPERIOR COURT 
 
 WALTHAM CENTERPOINT I INVESTMENT GROUP, LLC v. GENERATION BIO CO

 
 Docket:
 2484CV00462-BLS2
 
 
 Dates:
 January 21, 2025
 
 
 Present:
 Kenneth W. Salinger
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 DECISION AND ORDER ALLOWING PLAINTIFF’S MOTION FOR PRELIMINARY INJUNCTION
 
 

 Waltham Centerpoint I Investment Group, LLC, bought commercial property part of which had been leased to Generation Bio Co, and succeeded to the prior owner’s obligations to and rights against Generation Bio. The Lease required Generation Bio to build out the leased space, with Centerpoint obligated to pay $26 million of the tenant improvement cost.
In late 2023, Generation Bio gave notice that it was therefore terminating the Lease on that ground that Centerpoint allegedly committed a material breach by unreasonably rejecting several proposed improvement plans. By January 31, 2024, Generation Bio vacated the leased premises, returned possession to Centerpoint, and stopped paying rent; it has paid no rent since then. Two weeks later, Centerpoint asserted that Generation Bio was in default and terminated the Lease.
Centerpoint filed suit seeking damages for breach of contract and a declaratory judgment that Generation Bio had no right to terminate the lease or withhold rent. Generation Bio asserted counterclaims for breach of contract and alleged violation of G.L. c. 93A.
Judge Squires-Lee recently allowed Centerpoint’s motion for partial summary judgment. She concluded that Generation Bio’s obligation to pay rent is independent of all other Lease covenants under the plain language in the Lease, Generation Bio was therefore not permitted to withhold rent or terminate the lease even if Centerpoint had breached the Lease by improperly withholding approval of the tenant improvement plans, and Generation Bio had not mustered evidence sufficient to show it had been constructively evicted. Judge Squires-Lee ordered and declared that (1) Generation Bio had no right to withhold rent or to terminate the Lease “under any circumstances, pursuant to the express terms of the lease,” and (2) Generation Bio’s purported termination of the Lease is therefore “of no force and effect.”
 
                                                            -1-
 
Centerpoint promptly demanded that Generation Bio “resume timely payment of all rent and other amounts due under the Lease.” Generation Bio declined to do so, arguing in part that (a) Centerpoint has not yet elected what remedies it plans to seek under § 19.3 of the Lease, and (b) while Generation Bio may be liable for damages equal to rent that would have been due if Centerpoint had not terminated the lease, Centerpoint is obligated to use reasonable efforts to relet the premises and has not shown it has done so. If Centerpoint were to succeed in releasing the premises, then Generation Bio would be entitled to an appropriate credit, defined by the Lease.
Centerpoint responded by serving and then filing a motion seeking a preliminary injunction that would require Generation Bio to pay all “sums due and owing under the Lease” and to resume “timely payment of all rent and other amounts due” under the Lease.”
“Trial judges have broad discretion to grant or deny injunctive relief.” Lightlab Imaging, Inc. v. Axsun Technologies, Inc., 469 Mass. 181, 194 (2014). “To obtain a preliminary injunction, the applicant must show a likelihood of success on the merits of the underlying claim; actual or threatened irreparable harm in the absence of injunction; and a lesser degree of irreparable harm to the opposing party from the imposition of an injunction.” Wilson v. Commissioner of Transitional Assistance, 441 Mass. 846, 860 (2004).
The Court will exercise its broad discretion to allow this motion and grant the requested preliminary injunctive relief because Centerpoint is certain to prevail on the merits of its contract claim, Centerpoint will be irreparably harmed if Generation Bio does not pay all back rent and all continue to pay rent and other charges as they come due, and Generation Bio will not suffer any irreparable harm from being required to comply with its contractual obligations. The Court concludes in the exercise of its discretion that Centerpoint need not post a bond, as Generation Bio has not asked for one. Cf. Petricca Const. Co. v. Commonwealth, 37 Mass. App. Ct. 392, 400-401 (1994) (court has discretion to issue preliminary injunction without requiring moving party to post security, and judge did not abuse that discretion where non-moving party made no request for security).
1. Likelihood of Success. Judge Squires-Lee’s decision establishes that Centerpoint will prevail on its claim for breach of contract and obtain a judgment ordering Generation Bio to pay all rent and other charges that would have been due if Centerpoint had not terminated the Lease, and to do so at the
 
                                                            -2-
 
times that Generation Bio was obligated to pay these amounts, as required under § 19.3 of the Lease.
The suggestion that Centerpoint must choose among the three possible remedies available under § 19.3 before Generation Bio has to pay anything is incorrect. And Generation Bio’s arguments that it may continue to withhold rent until Centerpoint proves it has made reasonable efforts to relet the space, or even until Centerpoint’s counterclaim is resolved, are barred by the same independent-covenants provision already construed by Judge Squires-Lee.
The default remedy in § 19.3 was automatically triggered when Generation Bio defaulted by refusing to keep paying rent and Centerpoint therefore terminated the Lease. This remedy requires Generation Bio to keep paying rent and all other charges due under the Lease, even after Centerpoint terminated the Lease, and to do so at the times they would have become due under the Lease if it had not been terminated.
Centerpoint was not required to make an affirmative election of this default remedy, as Generation Bio contended in its November 2024 letter. Instead, § 19.3 gave Centerpoint the option of selecting either of two alternative remedies, in lieu of the default remedy, if it wished. One alternative would be for Centerpoint to opt at any time to stop receiving the rent and charges due under the Lease and instead receive a lump sum payment equal to the discounted present value of all future net rent payments owed under the Lease. The other alternative would be for Centerpoint to opt to accept one full year’s rent and other charges as liquidated damages, in lieu of any other form of damages. Since Centerpoint has not elected to receive a lump-sum present value payment in lieu of future rent, and did not choose to receive liquidated damages, Generation Bio is contractually obligated under § 19.3 to keep paying all rent and charges as they come due under the Lease. Which means, of course, that it is also obligated to come current as to past rent due.
Generation Bio’s assertion that its obligation to pay rent under § 19.3 is subject to Centerpoint’s obligation to make reasonable efforts to relet the Premises, and that therefore Centerpoint cannot collect any more rent until it proves that it has made such efforts, is incorrect as a matter of law. Its alternative argument that it may be excused from further performance because its counterclaim for breach of contract is still pending is also incorrect.
 
                                                            -3-
 
The Lease provides that Generation Bio’s obligation to pay rent, including its obligation under § 19.3 to pay rent as damages after a Lease termination due to Generation Bio’s breach, is independent from every other covenant in the Lease and that Generation Bio may therefore not withhold rent (including rent due as damages after termination) due to an alleged breach of other covenants by Centerpoint. Section 20.2 of the Lease provides in part (emphasis added):
Except as otherwise provided in this Lease, in no event shall Tenant have the right … to withhold Rent or to set-off any claim or damages against Rent as a result of any default by Landlord or breach by Landlord if its covenants or any warranties or promises hereunder. Tenant’s covenants contained in this lease are independent and not dependent…. Without limiting the generality of the foregoing, Tenant’s covenant to pay Rent is independent of every other covenant in this Lease.
The effect of this provision is to negate the common law rule of mutually dependent covenants, under which a landlord’s material breach of a commercial lease may be an affirmative defense to a claim for non-payment of rent or damages equivalent  to  rent.  Cf.  Wesson  v.  Leone  Enterprises,  Inc., 437 Mass. 708, 720 (2002); Classic Restaurant Concepts, LLC v. President and Fellows of Harvard College, 104 Mass. App. Ct. 323, 339 (2024).[1]
Judge Squires-Lee has already held that § 20.2 bars Generation Bio from withholding rent even if Centerpoint breached some requirement of the Lease.
 
--------------------------------------------
 
[1] In 2002, the Supreme Judicial Court “abandon[ed] the common-law rule of independent covenants in commercial leases in favor of the modern rule of mutually dependent covenants as reflected in the Restatement (Second) of Property (Landlord and Tenant) § 7.1 (1977).” Wesson, 437 Mass. at 709. Under the old rule, a commercial tenant’s covenant to pay rent was independent from the Landlord’s covenants, and the Tenant was relieved from its obligations— including its obligation to pay rent—“only by actual or constructive eviction.” Id. at 715, quoting Barry v. Frankini, 287 Mass. 196, 201 (1934). Today, the default rule is that a commercial tenant may terminate the lease, and thus stop paying rent, if the landlord does not perform a promise that was a significant inducement in the making of a lease, within a reasonable time after being asked to do so. Id., 437 Mass. at 720; accord Classic Restaurant Concepts, 104 Mass. App. Ct. at 339. However, this new rule that commercial leases consist of mutually dependent covenants does not apply where, as in this case, “the parties to a lease validly agree otherwise.” Classic Restaurant Concepts, 104 Mass. App. Ct. at 339, quoting Wesson, 437 Mass. at 720, quoting in turn Restatement § 7.1.
 
                                                            -4-
 
The Court concludes that this holding and the independent covenant provision in § 20.2 apply with full force not only to the rent and other charges that were due before Centerpoint terminated the Lease due to Generation Bio’s material breach, but also to rent and other charges due as damages under § 19.3 after termination. Section 20.2 provides that all of Generation Bio’s covenants are independent; it is not limited to Generation Bio’s obligation to pay rent prior to any termination due to a default, but also applies to the obligation under § 19.3 to pay amounts equal to rent after such a termination.
This ruling resolves any possible dispute over whether Generation Bio is obligated to pay back rent and to keep paying rent and other charges as they come due under the Lease. “Because a lease is a contract,” and the terms of this Lease are not ambiguous, “its proper interpretation is a ‘question of law for the court.’ ” Cambridge Street Realty, LLC v. Stewart, 481 Mass. 121, 130 (2018) (internal citation omitted), quoting Freelander v. G. & K. Realty Corp., 357 Mass. 512, 516 (1970).[2]
In sum, since Generation Bio agreed that all of its Lease obligations are independent and that it may not withhold rent based on any default or breach by Centerpoint, Generation Bio is obligated under § 19.3 to keep paying rent and other charges as they come due and cannot withhold them on the theory that Centerpoint has failed to prove compliance with its covenant to use reasonable efforts to relet the leased premises or that Generation Bio may be able to prove its counterclaim that Centerpoint breached the Lease. Centerpoint is therefore certain to succeed on the merits of its claim for breach of contract.
2. Irreparable Harm and Balance of Harms. Since Centerpoint has shown that it is certain to succeed on the merits of its claim that Generation Bio will continue breaching its lease and unless it pays rent and other charges as they become due under the Lease, Centerpoint’s proof that it will suffer irreparable harm if the requested preliminary injunction is more than adequate.
 
--------------------------------------------
 
[2] The Court finds that the relevant Lease provisions are unambiguous, so their meaning is a question  of  law.  See  Eigerman  v.  Putnam  Investments,  Inc., 450 Mass. 281, 287 (2007). Whether language used in a contract “is ambiguous is also a question of law for the court.” Berkowitz v. President & Fellows of Harvard College, 58 Mass. App. Ct. 262, 270, rev. denied, 440 Mass. 1101 (2003). The fact that the parties disagree about how to read their Lease does not it ambiguous. See Indus Partners, LLC v. Intelligroup, Inc., 77 Mass. App. Ct. 793, 795 (2010).
 
                                                            -5-
 
“What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits.” Hull Municipal Lighting Plant v. Massachusetts Mun. Wholesale Elec. Co., 399 Mass. 640, 644 (1987), quoting Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616 (1980). In other words, irreparable harm must be measured together with likelihood of success on a “sliding scale.” Vaqueria Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 485 (1st Cir. 2009). “Simply stated, more of one excuses less of the other.” EEOC v. Astra USA, Inc., 94 F.3d 738, 743 (1st Cir. 1996), quoting Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150 153 (6th Cir. 1991).
The Court fully credits the affidavit of Samuel Depoy filed by Centerpoint.[3] Based on that affidavit, the Court finds that if Generation Bio continues to flout its Lease obligations then Centerpoint will likely lose out to competitors in leasing this other commercial lab space.
Centerpoint has shown, and the Court finds, that if Generation Bio does not pay the rent and other charges it owes under the Lease for space at 41 Seyon Street in Waltham, as required by § 19.3 of the Lease, then Centerpoint will not be able to fund tenant improvement allowances required to lease out large commercial spaces totaling about 80,000 square feet in the 43 Foundry Avenue building on the same campus where Generation Bio had leased space.
The assertion by Generation Bio that Centerpoint’s financial constraints do not matter because Centerpoint’s owner holds billions of dollars in cash and tens of billions of dollars of illiquid real estate holdings misses the mark.[4] One of the
 
--------------------------------------------
 
[3] In deciding a motion, a judge may make findings of fact based on verified pleadings, sworn affidavits, and documentary evidence supplied by the parties. See, e.g., Carabetta Enterprises, Inc. v. Schena, 25 Mass. App. Ct. 389, 391– 392 (1988). When considering sworn affidavits, “the weight and credibility to be accorded those affidavits are within the judge’s discretion” and “[t]he judge need not believe such affidavits even if they are undisputed.” Commonwealth v. Furr, 454 Mass. 101, 106 (2009). An affidavit “is a form of sworn testimony the credibility of which is to be determined by the judge.” Psy-Ed Corp. v. Klein, 62 Mass. App. Ct. 110, 114 (2004).
[4] Generation Bio relies on materials that it found on the Internet, which  would  be inadmissible at trial because they are not authenticated and constituted inadmissible hearsay. See Commonwealth v. Williams, 456 Mass. 857, 868–869 (2010)  (like  all  exhibits,  documents  obtained  from  the  Internet  must  be
<continued…>
 
                                                            -6-
 
“bedrock principles of corporate common law” is that separate corporations or limited liability companies are generally “regarded as separate and distinct entities,” even if there are “relationships between or among them.” Lemos v. Electrolux North America, Inc., 78 Mass. App. Ct. 376, 381 (2010), rev. denied, 459 Mass. 1103 (2011), quoting Scott v. NG US 1, Inc., 450 Mass. 766, 766 (2008). As a result, a corporation or LLC “is separate and distinct from its owners.” Andrade v. Aetna Life & Cas. Co., 35 Mass. App. Ct. 175, 178 (1993). Whether Centerpoint’s owner is flush with cash and other assets is beside the point.
Focusing as it must on Centerpoint’s finances, the Court credits Mr. Depoy’s testimony that Centerpoint will have to fund tenant improvement allowances of at least $28 million in order to lease the currently empty space at 43 Foundry Avenue. It also credits his testimony that without Generation Bio’s rent payments Centerpoint has a negative cash flow, and thus will have no income to pay such costs. And it finds that none of the $26 million tenant improvement allowance promised to Generation Bio is available to cover the 43 Foundry Avenue costs, because it also credits Mr. Depoy’s testimony that Centerpoint will have to spend at least $23 million to build out the 41 Seyon Street space leased to Generation Bio if it is to have any hope of leasing it to a successor tenant, plus pay an additional $4.3 million to repair a water pipe leading to that building, complete an electrical upgrade to increase the power available to both buildings on the campus, and landscape the campus.
The Court finds that Centerpoint will probably lose out on the opportunity to lease the 80,000 square feet of space available at 43 Foundry Avenue if Generation Bio continues to breach its Lease and fails to resume paying rent.
Centerpoint is entitled to a preliminary injunction to protect it against such harm, because Centerpoint is unlikely to be able to prove at trial the extent of its injury and thus is unable to be able to recover adequate damages even after
 
--------------------------------------------
 
authenticated to be admissible); Kace v. Liang, 472 Mass. 630, 646 (2015) (content of Internet Web pages introduced for its truth, that did not fall within any hearsay exception, was inadmissible; Grassi Design Group, Inc. v. Bank of America, N.A., 74 Mass. App. Ct. 456, 462 n.12 (2009) (information “found on an Internet Web site” is “inadmissible hearsay”).
The Court recognizes, however, that when deciding a motion for a preliminary injunction it is free to consider evidence that would be inadmissible at trial, though “[t]he possible inadmissibility of evidence can be taken into account by the judge in according proper weight to the evidence.” Planned Parenthood League of Massachusetts, Inc. v. Operation Rescue, 406 Mass. 701, 711 n.9 (1990).
 
                                                            -7-
 
prevailing on the merits. As the Massachusetts Appeals Court has noted, “[t]he inability to predict market developments,” and therefore to quantify a potential loss of market share, “is a well-recognized attribute of irreparable harm.” Genzyme Corp. v. Laidlaw, no. 13-P-1990, 2014 WL 470409, at *2 (Mass. App. Ct. Feb. 7, 2014) (unpublished decision) (affirming preliminary injunction based on findings of likelihood of success and likely loss of market share).
An irreparable injury is any harm that “cannot be vindicated by litigation on the merits.” Koshy v. Sachdev, 477 Mass. 759, 770 (2017); accord Packaging Indus., 380 Mass. at 616 (irreparable injury occurs from a “loss of rights that cannot be vindicated should it prevail after a full hearing on the merits”). In other words, “[a] plaintiff experiences irreparable injury if there is no adequate remedy at final judgment.” Massachusetts Port Auth. v. Turo Inc., 487 Mass. 235, 247 (2021), quoting GTE Prods. Corp. v. Stewart, 414 Mass. 721, 724 (1993).
It follows that purely economic harm can be irreparable if there is no way to compensate for it through an award of damages in a final judgment. “The preservation of legitimate economic expectations pending the opportunity for trial is a basis for granting preliminary injunctive relief.” Loyal Order of. Moose, Inc., Yarmouth Lodge #2270 v. Board of Health of Yarmouth, 439 Mass. 597, 603 (2003) (vacating denial of preliminary injunction barring enforcement of smoking ban, where plaintiff was likely to succeed on merits and without injunction would suffer economic injury that final relief could not address), quoting Edwin R. Sage Co. v. Foley, 12 Mass. App. Ct. 20, 29 (1981) (affirming preliminary injunction barring landlord from leasing space to competitor of commercial tenant in violation of lease covenant, because leaving tenant with remedy of damages for diminished profits would be of “dubious efficacy”).
For example, if a failure to make required monthly payments threatens the “very existence” of the moving party’s business, that would constitute irreparable harm. See Hull Municipal Lighting, 399 Mass. at 643–644.
“To establish irreparable harm, however, a plaintiff need not demonstrate that the denial of injunctive relief will be fatal to its business.” Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 18–19 (1st Cir. 1996).” If the plaintiff suffers a substantial injury that is not accurately measurable or adequately compensable by money damages, irreparable harm is a natural sequel.” Id. (affirming preliminary injunction ordering Baccarat to keep selling its wares to the plaintiff as required by the parties’ contract).
 
                                                            -8-
 
It is well established that the loss of significant business opportunities whose value cannot readily be quantified, as in this case, is also a form of irreparable harm that will support issuing a preliminary injunction. MacGinnitie v. Hobbs Group, LLC, 420 F.3d 1234, 1242 (11th Cir. 2005); accord, e.g., Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 404 (2d Cir. 2004) (lost business opportunities); Life Spine, Inc. v. Aegis Spine, Inc., 8 F.4th 531, 545–546 (7th Cir. 2021) (lost business, customers, and market share); Arizona Dream Act Coalition v. Brewer, 757 F.3d 1053, 1068 (9th Cir. 2014) (inability to expand business to new customers); Yorktown Systems Group Inc. v. Threat Tec LLC, 108 F.4th 1287, 1296–1297 (11th Cir. 2024) (loss of institutional knowledge and experience needed to bid on future government contracts); Natera, Inc. v. NeoGenomics Laboratories, Inc., 106 F.4th 1369, 1378 (Fed. Cir. 2024) (lost market share).
In sum, the Court concludes that Centerpoint will likely lose out on the opportunity to lease out other commercial space on the campus if Generation Bio is not compelled to comply with its contractual obligation to pay all rent and other charges due under the Lease, that the loss of profits from leasing this space would be irrepararable because it could not readily be quantified and thus Centerpoint could not recover an adequate remedy at final judgment, and that the likelihood of this loss is sufficient to justify a preliminary injunction in this case because Centerpoint is certain to prevail on the merits.
The dictum that Generation Bio quotes from a Supreme Judicial Court opinion does not compel a different conclusion.[5]
 
--------------------------------------------
 
[5] As Generation Bio correctly notes, the Supreme Judicial Court has noted the general rule that, in most cases, “[e]conomic harm alone … will not suffice as irreparable harm unless ‘the loss threatens the very existence of the movant's business.’ ” Tri-Nel Mgmt., Inc. v. Bd. of Health of Barnstable, 433 Mass. 217, 227– 228 (2001), quoting Hull Municipal Lighting Plant, 399 Mass. at 643.
But Tri-Nel Mgmt. did not address whether the loss of significant business opportunities the value of which cannot readily be quantified may also constitute irreparable harm, as that was not at issue in that case. Though the plaintiff in Tri-Nel argued that the challenged smoking ban would cause a loss of business income, the SJC did not address whether the claimed damages would be provable at trial if the plaintiff were to succeed on its claim. “Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided
<continued…>
 
                                                            -9-
 
Finally, the Court concludes that the balance of harms favors Centerpoint. That is, the risk of irreparable harm to Centerpoint if the preliminary injunction does not enter outweighs the risk of irreparable harm to Generation Bio if it is required to pay the rent and other charges due under its Lease. Indeed, Generation Bio has not argued that it will suffer any irreparable harm if the Court allows the motion for a preliminary injunction.
ORDER
Plaintiff’s motion for preliminary injunction is allowed. The Court will issue a preliminary injunction that requires Defendant to promptly pay all amounts due under its Lease, and to continue making monthly payments equivalent to rent as required by the Lease.
Kenneth W. Salinger
Justice of the Superior Court
January 21, 2025
 
--------------------------------------------
 
as to constitute precedents.” McEvoy Travel Bureau, Inc. v. Norton Co., 408 Mass. 704, 719 n.12 (1990), quoting Webster v. Fall, 266 U.S. 507, 511 (1925). 
Furthermore, the sentence that Generation Bio quotes from Tri-Nel is non- binding dictum. The SJC held in Tri-Nel that the plaintiff’s failure to establish any likelihood of success on the merits was “sufficient to deny injunctive relief.” See Tri-Nel Mgmt., 433 Mass. at 227. This means that the following brief discussion of irreparable harm was unnecessary. If the party seeking a preliminary injunction cannot demonstrate any likelihood of success on the merits, “the remaining factors become matters of idle curiosity.” Lieber v. President and Fellows of Harvard College, 488 Mass. 816, 822 (2022), quoting Foster v. Commissioner of Correction, 484 Mass. 698, 712 (2020). Statements by appellate courts that are “unnecessary to the holding of the case” are “merely dicta” and are not binding. See Town of Dartmouth v. Greater New Bedford Regional Vocational Technical High School Dist., 461 Mass. 366, 381 (2012); accord, e.g., Commonwealth v. Rahim, 441 Mass. 273, 284 (2004) (dictum in prior SJC decision is entitled to “little weight”).